

Eileen W. Hollowell, Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| DAVID CONNELLY and | ) | Case No. 4:09-bk-33553-EWH |
| ELIZABETH CONNELLY, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| DAVID CONNELLY, | ) | Case No. 4:12-ap-00100-EWH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. BANK NATIONAL | ) | |
| ASSOCIATION, AS TRUSTEE FOR | ) | |
| THE BENEFIT OF HARBORVIEW | ) | |
| MORTGAGE LOAN TRUST 2005-3, | ) | |
| AND DOES 1-1000, | ) | **MEMORANDUM DECISION RE:** |
| | ) | **DEFENDANT'S MOTION FOR SUMMARY** |
| Defendant. | ) | **JUDGMENT** |
| _____ | ) | |

## I. INTRODUCTION

David Connelly ("Plaintiff") filed a complaint to determine the extent and validity

of a lien on his residence and to receive additional related relief. U.S. Bank

("Defendant") filed a motion to dismiss ("the Motion"), asserting that Plaintiff failed to

state any claim upon which the Court can grant relief. Because the Motion included a number of exhibits, it is being treated as a motion for summary judgment.

After considering all of the pleadings, briefs, and affidavits submitted by both parties, the Court finds that Defendant is entitled to summary judgment.

## II. FACTUAL AND PROCEDURAL HISTORY

A. <u>Plaintiff's Mortgage, Assignments, and Default</u>

Plaintiff borrowed $273,523.00 ("the Loan") from ComUnity Lending, Inc. ("ComUnity") on March 29, 2005 in order to purchase a home ("the Residence"). The Loan was evidence by a promissory note ("the Note") executed on the same day. The Note was secured by a deed of trust ("the DOT"), recorded on March 31, 2005, which encumbers the Residence. The DOT lists ComUnity as the payee; Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, acting as a nominee for ComUnity and its successors and assigns; and First American Title Insurance Company ("First American") as the trustee.

The Note was subsequently transferred multiple times. It bears three indorsements (collectively "the Indorsements"): (1) from ComUnity to Countrywide Document Custody Services ("CDCS"), signed by Lily Nguyen, who is listed as a "Loan Closer" for ComUnity; (2) from CDCS to Countrywide Home Loans Inc. ("Countrywide"), without recourse, signed by Laurie Meder, a CDCS vice president; and (3) a blank indorsement executed by David Spector, a Countrywide managing director.[1]

The DOT was assigned from MERS to Defendant, as trustee for a mortgage-securities trust created by Greenwich Capital Acceptance and Greenwich Capital

---

[1] The Arizona Revised Statutes do not require that indorsements be dated. Ariz. Rev. Stat. § 47-3204.

Financial Products, on September 29, 2009 ("the DOT Assignment"). Leticia Quintana ("Quintana"), listed as an assistant secretary of MERS, executed the DOT Assignment. Quintana's signature was notarized on September 25, 2009 by Elizabeth Lopez ("Lopez"), a California notary public. Defendant substituted ReconTrust Company, N.A. ("ReconTrust") as trustee of the DOT on the same date ("the Trustee Substitution"). Quintana, again listed as an assistant secretary, signed the Trustee Substitution on behalf of Defendant. Lopez notarized Quintana's signature on the Trustee Substitution on September 25, 2009. On both the DOT Assignment and the Trustee Substitution, the notary portion on the primary document is crossed out, and a separate sheet of paper with the notary oath, signature, and seal is affixed as an attachment.

Plaintiff defaulted on the Loan on October 1, 2008. On September 29, 2009, ReconTrust noticed ("the Sale Notice") a foreclosure sale ("the Trustee's Sale") for December 31, 2009. The Sale Notice was signed on ReconTrust's behalf by Daniel Rogriguez ("Rodriguez"), who was listed as a "team member." Rodriguez's signature was notarized by Lopez on September 25, 2009. In identical fashion to the DOT Assignment and Trustee Substitution, the notary section on the Sale Notice is crossed out and an addendum with the notary oath, signature, and seal is attached at the end.

Plaintiff, along with his wife, filed a Chapter 13[2] voluntary petition on December 29, 2009.

---

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure. All "Local Rule" references are to the Local Rules for practicing in the U.S. Bankruptcy Court, District of Arizona.

B.    The Complaint

On January 16, 2012, Plaintiff filed a "Complaint to Determine the Extent and Validity of Lien on Real Property, for Quiet Title, for Injunctive Relief, to Recover Money, Pursuant to Statutory and/or Equitable Damages, Attorney Fees and Costs, for Declaratory Relief, and a Conditional Action for an Accounting and to Obtain Unapplied Credits" ("the Complaint"). Plaintiff seeks relief on four counts.[3]

    1.    *Count I*

In Count I, Plaintiff seeks a determination of the extent and validity of the lien created by the DOT, in addition to an injunction to bar Defendant or any affiliate from asserting any lien on the Residence. Plaintiff alleges that Defendant does not own the Note, because it did not pay value for it, and is not a holder of the Note, because the Indorsements have not been authenticated and do not comply with terms of a mortgage securitization agreement.[4]  Plaintiff further alleges that no actual funds "ever changed hands" in the course of originating the Loan because the money that ComUnity loaned to Plaintiff was generated by the sale of mortgage-backed securities ("MBS"). Plaintiff concludes that the only parties whose funds were used in making the Loan came from MBS investors ("the Investors"), and that Defendant may only assert an interest on their behalf, not its own. Finally, Plaintiff asserts that BAC, the Loan servicer, may not act on behalf of the Investors; only Defendant may do so.

According to Plaintiff, only the Investors can be harmed by Defendant's alleged failure to properly obtain ownership of the Note and DOT. The sole remedies available

[3] The Complaint is meandering, lengthy, and unclear.

[4] Neither the Complaint nor any other pleading describes the date of execution or the parties to the mortgage securitization agreement. However, the Court need not consider that agreement in deciding Defendant's summary judgment motion.

4

to the Investors are to access "credit default contracts"[5] or to bring lawsuits against the parties that allegedly improperly transferred the Note and DOT. Plaintiff further asserts that as a result of the alleged improper transfers of the Note and DOT, Plaintiff is the only party with a legitimate claim to legal title of the Residence. Plaintiff seeks a permanent injunction under Ariz. Rev. Stat. ("ARS") § 12-1101(A)(5) to this effect, although the Complaint acknowledges that injunctive relief "will not be ripe until the final results on the merits is (*sic*) reached."

### 2.    Count II

In Count II, Plaintiff seeks to recover damages for falsely recorded documents and notary fraud. Under ARS §§ 33-420(A), (C), and 39-161, Plaintiff alleges that Defendant and its agents, including Quintana and Lopez, falsified signatures and notarizations affixed to the DOT, the Trustee Substitution, and the Sale Notice. Plaintiff claims that Quintana never served as an assistant secretary for MERS or Defendant; that Lopez crossed out notary portions of the DOT and Trustee Substitution, indicating that she did not witness the signatures as sworn; and that Quintana, Lopez, and Defendant knowingly produced false documents and lied. The Complaint asserts that additional evidence will be produced which demonstrates a pattern of misfeasance. Plaintiff seeks treble damages and attorney's fees on Count II.

### 3.    Count III

In Count III, Plaintiff seeks declaratory relief under Rule 7001(9), including findings that: the DOT, Trustee Substitution, and Sale Notice are void; that ComUnity completely divested itself of any interest in the Note and DOT prior to May 1, 2005; that

---

[5] Plaintiff does not define "credit default contracts" or otherwise explain how the Investors could use them.

Case 4:12-ap-00100-EWH    Doc 48    Filed 02/06/13    Entered 02/06/13 14:34:47    Desc
Main Document - Motion to Dismiss Complaint      Page 5 of 25

Defendant does not own the Note; that Defendant is holder of the Note;[6] that Defendant

has no right to enforce the Note; that Defendant holds no interest in the Residence; that

no successor of any parties named in the Indorsements can own the Note or DOT; and

that no party owns the Note or DOT through a right arising out of privity with Defendant.

    4.  *Count IV (Contingent on Plaintiff not prevailing on Counts I-III)*

   In Count IV, Plaintiff seeks a determination that the Note has been "discharged

by satisfaction." Plaintiff alleges that the Note has been substantially paid by a

combination of payments made by Plaintiff and "miscellaneous payments" made as a

result of mortgage pooling, securities sales, and credit default swaps. If any party is

found to own the Note, Plaintiff demands an accounting of direct and "miscellaneous

payments."

C. <u>The Motion</u>

   On May 11, 2012, Defendant filed the Motion. Defendant alleges that pursuant

to Civil Rule 12(b), Plaintiff has failed to state a claim upon which relief can be granted.

Included in the moving papers as exhibits are: a copy of the original Note bearing the

Indorsements; a copy of the DOT; a copy of the DOT Assignment transferring beneficial

interest under the DOT from MERS to Defendant; a copy of the Trustee Substitution; a

copy of the Sale Notice; and a copy of the Cancellation of Notice of Sale.

   Defendant argues that Count I fails because Plaintiff does not assert that he

owns the Note, nor does Plaintiff assert that some other party has a right to enforce the

Note. Meanwhile, Defendant asserts that it holds a properly negotiated bearer

---

[6] This request is contrary to Paragraph 9 of Count I, where Plaintiff denies that Defendant is the holder of the Note.

Case 4:12-ap-00100-EWH   Doc 48   Filed 02/06/13   Entered 02/06/13 14:34:47   Desc
Main Document - Motion to Dismiss Complaint   Page 6 of 25

instrument which evidences that Defendant is the holder of the Note.[7] Additionally,

Defendant asserts that Plaintiff has not pled facts to satisfy the threshold inquiry of a

temporary restraining order, and in any event, Plaintiff admits that permanent injunction

is not ripe, so the prayer for injunctive relief should be dismissed.

Defendant argues that Count II fails because Plaintiff's state-law claim is a non-

core proceeding beyond this Court's constitutional jurisdiction. Defendant further

contends that ARS § 33-420 only governs documents that create interests in property

but not those pertaining to assignments, substitutions, and notices.

Defendant argues that Count III fails because it seeks declaratory relief that is

duplicative of the remedies sought in the other counts.

Defendant argues that Count IV fails because it lacks any legal basis. Defendant

contends that Plaintiff offers an erroneous interpretation of the DOT's "miscellaneous

payments" provision,[8] mistaking a narrow clause that covers monies obtained as a

result of events which diminish the value of the Residence, such as abandonment or

damage, to more broadly include the attenuated financial transactions alleged in the

Complaint.

The Motion also seeks an award of its fees and costs pursuant to language in the

Note, the DOT, and ARS § 12-341.01.

---

[7] Arizona has adopted the Uniform Commercial Code ("UCC") at ARS §§ 47-1101 through 47-4A507. Article 3 of the Uniform Commercial Code defines a "holder" as: "(a) The person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession; (b) The person in possession of a negotiable tangible document of title if the goods are deliverable either to bearer or to the order of the person in possession; or (c) The person in control of a negotiable electronic document of title." ARS § 47-1201.

[8] The language concerning "miscellaneous payments" comes from Section 11 of the DOT's uniform covenants. Section 11 addresses miscellaneous proceeds to be disbursed in the event of damage to the Residence requiring restoration, a total taking of the Residence, a partial taking of the Residence, or abandonment of the Residence. See Motion to Dismiss, Ex. B.

7

D.    <u>The Response</u>

On June 2, 2012, Plaintiff filed a Response to Motion to Dismiss Complaint ("the Response"). In the Response, Plaintiff contends that the challenge to Defendant's right to enforce the Note and DOT has "two basic layers": 1) the sale of the Note and DOT violated a mortgage pooling and servicing agreement, contravening New York trust law; 2) the Note was not transferred in accordance with ARS § 47-9203.[9] To support his arguments, Plaintiff discusses New York law governing pooling and servicing agreements, arguing that Defendant lacks standing in this case due to alleged defects in securities contracts. It is also asserted that only Article 9 of the UCC[10] applies to the transfer of the Note, and that Defendant cannot satisfy Article 9's requirements. Addressing the quiet-title claim, Plaintiff concedes that it may be redundant but has

---

[9] The sections of ARS § 47-9203 cited by Plaintiff include:

A. A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.

B. Except as otherwise provided in subsections C through I of this section, a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
    1. Value has been given;
    2. The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
    3. One of the following conditions is met:
        (a) The debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;
        (b) The collateral is not a certificated security and is in the possession of the secured party under section 47-9313 pursuant to the debtor's security agreement;…

F. The attachment of a security interest in collateral gives the secured party the rights to proceeds provided by section 47-9315 and is also attachment of a security interest in a supporting obligation for the collateral.

G. The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the security interest, mortgage or other lien.

[10] ARS §§ 47-9101 through 47-9709.

been pled in an abundance of caution due to "favoritism that [c]ourts have obviously

shown to banks against homeowners, which have been doing harm to the law." Plaintiff

does not offer new material information to support the claims for false recordation,

declaratory relief, or an accounting.

E.    The Reply

On June 22, 2012, Defendant filed its Reply in Support of Motion to Dismiss ("the

Reply"). Defendant claims that Plaintiff fails to address the controlling law in Arizona and

the Ninth Circuit that governs which party may enforce rights under a note or deed of

trust. In addition, according to Defendant, Plaintiff cannot meet the equitable standard of

Arizona's quiet title statute because the Note has not been satisfied. Defendant further

contends that the Response neglects Defendant's arguments concerning false

recordation, and Defendant reiterates that Plaintiff's understanding of miscellaneous

payments under the DOT lacks any basis in the law.

F.    Conversion to Summary Judgment

The Court heard oral arguments on the Motion on August 2, 2012. On

September 26, 2012, the Court entered an Order ("the Conversion Order") notifying the

parties that in accordance with Civil Rule 12(d), made applicable in this case by Rule

7012(b), the Motion would be considered a motion for summary judgment due to its

reliance on exhibits beyond the pleadings. The Conversion Order instructed the parties

to submit any additional materials "pertinent to [the Motion]" within fourteen days and to

abide by the Court's Local Rules, particularly LR 9013-1, when filing their supplements.

On October 9, 2012, the Court reiterated these specific instructions in an Order

extending the filing deadline to November 7, 2012.

On November 16, 2012, following an additional extension, Defendant filed a Supplemental Brief in Support of Summary Judgment ("the Supplemental Brief") along with a Separate Statement of Facts that contains two exhibits.

Exhibit 1 is an affidavit submitted by Don Venture ("the Venture Affidavit"), a Senior Associate in the Corporate Trust Department of the Bank of New York Mellon Trust Company ("BNYMTC"), the document custodian for Defendant. The Venture Affidavit asserts that Venture has personal knowledge of BNYMTC's procedures for receiving and recording promissory notes. Attached to the Venture Affidavit are a copy of the original Note bearing the Indorsements and a copy of a computer printout from BNYMTC's records reflecting June 2, 2005 as the date upon which BNYMTC received the original Note. Venture testifies that since then, the original Note has been stored in a BNYMTC vault.

Exhibit 2 is a declaration submitted by David Duclos ("the Duclos Declaration"), a Vice President for Defendant. Attached to the Duclos Declaration are a copy of the Pooling and Servicing Agreement ("PSA") naming Defendant as trustee; a copy of the Mortgage Loan Purchase Agreement ("MLPA"); and a printout from a mortgage loan schedule referenced by the PSA and MLPA listing the Note among those in the mortgage pool.

Plaintiff did not file a brief in opposition to the Supplemental Brief. Instead, on November 16, 2012, Plaintiff submitted an affidavit claiming that Countrywide was the original Note servicer; that the Note copy provided at the time of the Loan closing carried an unsigned allonge ("the Allonge") with the language, "PAY TO THE ORDER OF COUNTRYWIDE DOCUMENT CUSTODY SERVICES…WITHOUT RECOURSE

10

ComUnity Lending…"; that the Allonge was never attached to any copy of the Note that Plaintiff or Plaintiff's counsel received from Defendant or its affiliated entities; that Defendant and its affiliated entities violated the Truth in Lending Act ("TILA");[11] and that Defendant and its affiliated entities ignored Plaintiff's correspondence and notices of rescission.

Plaintiff received one final extension to file any further opposition to the Supplemental Brief until November 19, 2012. A day later,[12] Plaintiff's counsel submitted an affidavit from Neil Garfield ("the Garfield Affidavit"), an attorney previously uninvolved in this case but a purported expert in mortgages and securitization who reviewed the documents at issue, and an affidavit from Plaintiff's counsel ("the Ryan Affidavit," and collectively with Plaintiff's other affidavits, "the Plaintiff Affidavits") containing exhibits with computer printouts of MERS records from 2005, correspondence between counsel and various other parties, and copies of the Note provided to counsel. The Ryan affidavit alleges that a Countrywide affiliate, BAC Home Loans Servicing, was the original servicer of the Note; that Defendant submitted a copy of the Note with an indorsed allonge for the first time when it filed the Motion; and that despite repeated requests for a "true and correct" copy of the "current" Note, Plaintiff's counsel never received a copy of the Note bearing the Indorsements.

Defendant filed a reply on December 21, 2012 reiterating its primary arguments, challenging the legal merit and procedural propriety of the Plaintiff Affidavits, and

---

[11] 15 U.S.C. §§ 1601 et seq.

[12] There have been no objections to acceptance of Plaintiff's late-filed materials, and the Court does not believe that taking them into account prejudices Defendant.

contending that it had further satisfied its burden of proof by providing the PSA, MLPA, and mortgage loan schedule along with its own affidavits.

### III. ISSUES

1) Is Defendant entitled to summary judgment?

2) Has Defendant demonstrated that it has a valid, enforceable interest in the Note and DOT?

### IV. JURISDICTIONAL STATEMENT

Jurisdiction is proper for the matters decided under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (K).

### V. DISCUSSION

At the outset, the Court notes that Plaintiff does not challenge that he borrowed $273,523.00 from ComUnity to purchase the Residence; that he executed the Note and DOT; and that he has been in default on the Loan since October 2008. Nor does Plaintiff argue that he has received demands for payment from different entities or that the foreclosure noticing procedures were improper. What remains in dispute is whether Defendant or any of its affiliates has a right to enforce the Note or DOT. Plaintiff argues that Defendant lacks this right because it holds no interest in the Note.

A.    <u>Motion to Dismiss and Motion for Summary Judgment Standard</u>

Rule 7012(b) applies Civil Rule 12(b)-(i) to adversary proceedings in bankruptcy court. Civil Rule 12(d) instructs that if a court considers matters outside of the pleadings when deciding a motion to dismiss brought under Civil Rule 12(b)(6), the motion must be treated as a motion for summary judgment under Civil Rule 56, and the parties must be given a reasonable opportunity to present all the material that is pertinent to the

Case 4:12-ap-00100-EWH    Doc 48    Filed 02/06/13    Entered 02/06/13 14:34:47    Desc
Main Document - Motion to Dismiss Complaint    Page 12 of 25

motion. Civil Rule 12(d). Civil Rule 56 is made applicable in a bankruptcy case by Rule 7056.

When a motion to dismiss is considered as a motion for summary judgment, the Ninth Circuit does not require strict adherence to formal noticing standards. Instead, the parties must be fairly apprised that a court is looking beyond the pleadings and treating the motion to dismiss as one for summary judgment. Olsen v. Idaho St. Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004). A party is "fairly apprised" that the court will be deciding a summary judgment motion if that party submits matters outside the pleadings and invites consideration of them. Cunningham v. Rothery (In re Rothery), 143 F.3d 546, 549 (9th Cir. 1998).

The Motion relies on exhibits beyond the pleadings, and to comply with Civil Rule 12(d), the Court must evaluate it as one for summary judgment. The parties have been fairly apprised: they received notice of the Conversion Order and have been afforded multiple opportunities to file supplemental documents for summary judgment consideration.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits…show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2550, 91 L. Ed. 2d 265, 273 (1986) The moving party has the burden of showing that there is no genuine issue of material fact. Celotex, 477 U.S. at 323; Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). When ruling on a motion for summary judgment, a court must view all the evidence in the light most favorable to the

13

nonmoving party. County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001). A trial court can only consider admissible evidence in ruling on a motion for summary judgment. See Civil Rule 56(e); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

Once the movant satisfies this burden, the burden shifts to the non-moving party. Celotex, 477 U.S. at 323. The "nonmoving party must go beyond the pleadings and, by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007). When contesting a moving party's facts, Civil Rule 56(e) requires that the non-movant's response, and not merely other papers, "'set forth specific facts' establishing a genuine issue." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001) (quoting Civil Rule 56(e)). This Court's Local Rules echo this requirement—a party opposing summary judgment "shall set forth separately from the memorandum of law…the specific facts…that…establish that a genuine issue of material fact exists that precludes summary judgment." Local Rule 9013-1(g).

Applying this legal standard to the present case, Defendant's Motion and additional filings must demonstrate that there is no genuine dispute about material facts, and that it is entitled to summary judgment as a matter of law. For reasons explained below, Defendant has satisfied this burden and summary judgment will be granted.

Defendant is entitled to summary judgment because Plaintiff's opposition consisted of unpersuasive conclusory statements which ignored Ninth Circuit law, the Bankruptcy Rules, the Local Rules, and the Conversion Order. Plaintiff's pleadings are

14

filled with inapposite legal theories unsupported by facts or law. For example, in the Response's discussion of how UCC Articles 3 and 9 affect the PSA and MLPA, Plaintiff never acknowledges that he is not a party to those contracts and fails to cite a single case from the Ninth Circuit to support his arguments. Notably, Plaintiff neglects to cite or adhere to recent Arizona and Ninth Circuit cases which address how a creditor may enforce its rights under a promissory note and deed of trust.

Further, Plaintiff seeks relief on four counts in the Complaint and then raises two additional, discrete grounds for relief in the Response, asserting that the latter two comprise the gravamen of Plaintiff's argument.[13] Not only is the second set pled with insufficient facts or coherence to survive the Motion, but a litigant must first seek leave from the Court to amend its pleadings. Civil Rule 15(a)(2) (made applicable by Rule 7015). Plaintiff failed to abide by this requirement and inappropriately introduced new grounds for relief in the Response.

The Plaintiff Affidavits betray a similar mistake, raising several arguments, such as alleged TILA violations, not pled in the Complaint. Even more damning, the Response and the Plaintiff Affidavits fail to separately specify the facts which militate against granting summary judgment to Defendant. They violate the standard articulated by Carmen and the Local Rules, which require that facts be set forth in serial fashion, not in narrative form. Each fact must refer to a specific portion of the record where the fact may be found. To this end, the Conversion Order expressly instructed the parties to abide by LR 9013-1 and remain focused on issues raised in the Motion. Plaintiff has done neither.

---

[13] In the Response, Plaintiff contends that (1) the sale of the Note and DOT violated New York trust law and (2) the Note was not transferred in accordance with ARS § 47-9203. Plaintiff did not mention either New York trust law or ARS § 47-9203 in the Complaint.

B.　　Defendant's Standing to Enforce the Note

Standing is "a threshold question" required in every federal case that determines whether the court may entertain the proceeding. Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 906 (9th Cir. BAP 2011) (quoting Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)) (internal quotation marks omitted). A creditor seeking to exercise some interest in a debtor's estate must demonstrate both constitutional and prudential standing. Veal, 450 B.R. at 906-7.

To establish constitutional standing, a creditor must clear the relatively low hurdle of demonstrating injury in fact, causation, and redressability. Veal, 450 B.R. at 906. A note holder seeking to enforce its lien satisfies these elements because bankruptcy's automatic stay prohibits pursuit of available remedies (injury), enjoins pursuit of relief outside of bankruptcy (causation), and offers potential relief—such as lifting the stay— which would remedy the injury (redressability). Id.

A lienholder also must demonstrate that it has prudential standing, and this means that the creditor must show that it is a "real party in interest" pursuant to Civil Rule 17(a). Veal, 450 B.R. at 907. In mortgage cases involving a negotiable instrument secured by real property, the substantive law is generally supplied by the UCC, as adopted or implemented by state law. See id. at 908-10 (discussing Article 3 and Article 9 of the UCC). "Under this construct, a party may establish its standing by showing it is the 'person entitled to enforce' the promissory note as that phrase is defined by UCC Article 3." Tovar v. Heritage Pac. Fin., LLC (In re Tovar), 2012 Bankr. LEXIS 3633 at *14-15, 2012 WL 3205252 (9th Cir. BAP Aug. 3, 2012) (citing Veal, 450 B.R. at 908-10).

16

In Arizona, the party seeking to enforce payment under a promissory note must establish that it is a "person entitled to enforce" an instrument. ARS § 47-3301. And though this seems axiomatic, the party obligated on the note must pay a "person entitled to enforce." <u>Veal</u>, 450 B.R. at 910. There are several ways to acquire the status of a "person entitled to enforce," and the most pertinent to this case is to become a "holder" of the note. A party is a holder of a note if that party possesses the note and either: (i) the note has been made payable specifically to the order of the party in possession; or (ii) the note is payable to the bearer. <u>Veal</u>, 450 B.R. at 911; ARS § 47-1201(B)(21)(a). When indorsed in blank, an instrument becomes payable to the bearer and may be negotiated by transfer of possession alone. ARS § 47-3205(B). "Bearer" means a person in possession of a negotiable instrument that is indorsed in blank. ARS § 47-1201(B)(5).

Construing these statutes together, the Court finds that Defendant is a holder of the Note entitled to enforce it because Defendant is the bearer of the Note properly indorsed in blank.[14] ARS § 47-3308(A) affords a presumption of authenticity to signatures on negotiable instruments, but it also provides that when the validity of an indorsement is challenged, the burden of demonstrating authenticity falls on the party asserting it.

---

[14] Even were Defendant's evidence of its status as the Note's holder impeached, it would likely have standing to enforce the Note as trustee of the mortgage pool into which the Note was transferred. As articulated in <u>In re Samuels</u>, 415 B.R. 8, 18 (Bankr. D. Mass. 2009), and adopted by this Court in <u>Deutsche Bank Nat'l Trust Co. v. Tarantola (In re Tarantola)</u>, 2010 Bankr. LEXIS 2435 at *13-17, 2010 WL 3022038 (Bankr. D. Ariz. July 9, 2010), a pooling and servicing agreement in conjunction with a corresponding schedule of mortgages deposited into a trust's pool serves as a written assignment of designated mortgage loans and the mortgages themselves. Defendant submitted a PSA along with the Venture Affidavit and the Duclos Declaration attesting to Defendant's possession of the Note since June 2, 2005 and the Note's inclusion in the PSA's governing mortgage pool schedule.

Plaintiff attempts to mount such a challenge but does not demonstrate that there is a genuine issue of material fact regarding the validity of the Indorsements. Rather than presenting plausible evidence along with the Complaint or Response, Plaintiff alleges that the Indorsements are invalid because the manner in which the Note was transferred violated New York trust law and unnamed securities laws. But Plaintiff fails to explain this theory sufficiently and fails to explain how errors in the securitization of the Note are germane to him.

In particular, Plaintiff argues that Article 3 is irrelevant to the determination of whether a Note has been properly transferred. In Plaintiff's view, the Indorsements, even if valid (which Plaintiff disputes), are immaterial because the Note is not a negotiable instrument. Instead, any transfer of the Note is governed by the terms of a "security agreement", which Plaintiff alleges is the PSA. Not a single case is cited to support this proposition. Plaintiff solely relies on his expert's assertion that he possesses "knowledge of the actual intents, purposes, meanings and effect of the 1999 amendments [to the] Uniform Commercial Code…. Article 9 applies to the sale of promissory notes." Garfield Aff. 9:9-12.

Even if this opinion testimony by a witness who has not been qualified as an expert could be considered by the Court, it would be rejected because it directly contradicts <u>Veal</u>. This Court follows the decisions of the Ninth Circuit BAP, and accordingly, Plaintiff's argument that only Article 9 applies to the transfer of the Note fails.

As has been pointed out to Plaintiff's counsel in other cases, the only issue relevant to Plaintiff regarding the transfer of the Note is whether he faces multiple

18

claimants competing for the right to be paid. <u>Veal</u>, 450 B.R. at 912; <u>Green v. Waterfall Victoria Master Fund 2008-1 Grantor Trust Series A (In re Green)</u>, 2012 Bankr. LEXIS 4884 at *25-26, 2012 WL 4857552 (9th Cir. BAP Oct. 15, 2012). No evidence has been presented which indicates that multiple parties have demanded payment of the Note.

Likewise, the Plaintiff Affidavits do not contain any controverting evidence or valid legal arguments in response to the Motion or Supplemental Brief. This omission is tantamount to a non-response pursuant to Civil Rule 56(e), Local Rule 9013-1(g), and <u>Carmen</u>. Consequently, Defendant could prevail "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." <u>Soremekun</u>, 509 F.3d at 984. But even with the Court's latitude in treating the Plaintiff Affidavits as evidence, they do not cast doubt on the authenticity of the Indorsements. The Plaintiff Affidavits are a mélange of speculation and legal theories lacking foundation, the sort of "[c]onclusory, speculative testimony in affidavits and moving papers" deemed "insufficient to raise genuine issues of fact and defeat summary judgment." <u>Id</u>.

For example, the Plaintiff Affidavits argue that Defendant filed a copy of the Note bearing an indorsed allonge as an attachment to the Motion. This is not true. The copy of the Note submitted by Defendant bears the Indorsements on the back of an original Note page. Plaintiff attempts to imply subterfuge, that this is a "floating allonge" case in which an allonge bearing previously unseen indorsements is submitted by a financial institution in an attempt to demonstrate holder status and rehabilitate incompetent evidence. <u>See</u>, <u>e.g.</u>, <u>In re Weisband</u>, 427 B.R. 13 (Bankr. D. Ariz. 2010). But the facts here do not align with that scenario because Defendant has only ever produced a properly indorsed copy of the Note in pleadings filed with the Court. In response to

poorly worded requests for copies of the "current" Note, Plaintiff may have received

incomplete reproductions, but the word "current" is not synonymous with "original."

"Current" is ambiguous and could be reasonably read as an inquiry seeking a copy of

the Note which sets out the loan terms, not necessarily a request for a copy of the

original Note bearing the Indorsements.

Nor does the copy of the unsigned Allonge provided to Plaintiff at closing impute

wrongdoing. Instead, it demonstrates that Plaintiff was on notice that ComUnity planned

to transfer the Note, and the Indorsements prove that ComUnity did, in fact, complete

the transfer to CDCS. A Note bearing an indorsement is preferable to an allonge due to

the evidentiary questions which indorsed allonges can create. An unsigned allonge "[is]

superfluous because the Note contain[s] an [i]ndorsement in blank on its face." Allen v.

U.S. Bank, NA (In re Allen), 472 B.R. 559, 567 (9th Cir. BAP 2012).

Accordingly, Plaintiff has failed to overcome the presumption raised by

Defendant's evidence that it is a holder entitled to enforce the Note.

C.    Validity of the Lien

As holder of the Note, Defendant is entitled to enforce the underlying security

instrument. In Arizona, it is a generally held principle that a promissory note and deed of

trust go together. See ARS § 33-817 ("The transfer of any contract or contracts secured

by a trust deed shall operate as a transfer of the security for such contract or

contracts"); see also Hogan v. Wash. Mut. Bank, 277 P.3d 781, 784 (Ariz. 2012);

Vasquez v. Saxon Mortgage, Inc., 228 Ariz. 357 (Ariz. 2011). Notwithstanding the clear

state of the law, the Court will nevertheless review it due to Plaintiff's allegations that *no*

party may enforce the Note and DOT.

"When a borrower takes out a home loan, the borrower executes two documents in favor of the lender: (1) a promissory note to repay the loan; and (2) a deed of trust…that transfers legal title in the property as collateral to secure the loan in the event of default." Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1039 (9th Cir. 2011). Under applicable Arizona non-judicial foreclosure law, "[w]hen parties execute a deed of trust and the debtor thereafter defaults, ARS § 33-807 empowers the trustee to sell the real property securing the underlying note through a non-judicial sale." Hogan, 277 P.3d at 782-83. A deed of trust may only be enforced by, or on behalf of, a party entitled to enforce the obligation that a mortgage secures. Id. at 783.

The Hogan case lays out critical details of how a deed of trust can be enforced: a party named by a deed of trust as beneficiary may act directly, or through a trustee, to foreclose on property when a borrower defaults on terms of the deed of trust. Initiating the sale does not require compliance with the UCC, and a trustee need not produce an original promissory note. Hogan, 277 P.3d at 783 (citing In re Weisband, 427 B.R. at 22; Mansour v. Cal-Western Reconveyance Corp., 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009)). Further, while a trustee's sale may be invalid if initiated by, or on behalf of, a party that is not entitled to enforce the obligations of the deed of trust, the invalidity of that particular foreclosure does not mean that there is no party with the power to foreclose. Cervantes, 656 F.3d at 1044. This last point is important because Plaintiff appears to contend that no party is entitled to the benefits of the DOT.

In this case, the DOT nominally designates MERS as "beneficiary" but explains that MERS serves as beneficiary "solely as nominee for Lender and Lender's successors and assigns." This does not fatally split a deed from the corresponding note,

as MERS is understood to be a type of agent for the original lender or its successors. Cervantes, 656 F.3d at 1044; see also Cedano v. Aurora Loan Servs., LLC (In re Cedano), 470 B.R. 522, 531 (9th Cir. BAP 2012); Weingartner v. Chase Home Finance, LLC, 702 F. Supp. 2d 1276, 1279-81 (D. Nev. 2010). As identified in the DOT, Lender was ComUnity. The DOT Assignment demonstrates that "for value received," MERS assigned its interest to Defendant, and the Trustee Substitution demonstrates that ReconTrust became trustee of the DOT. As a result, Defendant is the valid beneficiary of the DOT and ReconTrust is the proper trustee entitled to initiate foreclosure provided that the documents were properly executed.

D.    Document Execution

Fed. R. Evid. 902(4) and (9) provide that certified copies of public records, commercial paper, and documents related to commercial paper are entitled to a presumption of authenticity. Similarly, ARS § 33-502 provides that domestic notarial acts performed outside of Arizona are presumed genuine when introduced in the state. Under analogous statutes, such as those governing the authenticity of indorsements on commercial paper, the presumption of authenticity is rebuttable, and the burden of proof shifts to the documents' proponent when the opposing party challenges their authenticity.

Plaintiff has challenged the authenticity of the DOT, Trustee Substitution, and Sale Notice, all three of which would normally be admitted under the evidentiary presumptions just highlighted. In order to succeed, Plaintiff must provide "significant probative evidence tending to support" his allegations. Bias, 508 F.3d at 1218 (citing Gen. Bus. Sys. v. N. Am. Philips Corp., 699 F.2d 965, 971 (9th Cir. 1983)

(quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968))) (internal quotation marks omitted). Significant probative evidence goes beyond a mere "scintilla," and it is "'not enough to show that there is some metaphysical doubt as to the material facts.'" Mann v. GTCR Golder Rauner, L.L.C., 483 F. Supp. 2d 884, 890 (D. Ariz. 2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

While the Court must "'view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inference in his favor,'" Mann, 483 F. Supp. 2d at 890 (quoting Horphag v. Garcia, 475 F.3d 129, 1035 (9th Cir. 2006)), even under that standard Plaintiff has not produced significant probative evidence to cast doubt on the DOT, Trustee Substitution, and Sale Notice. In fact, Plaintiff has not produced any evidence to support his falsification claims, has not offered any useful detail, and only has promised to bring forth additional evidence at a later date. This comes closer to metaphysical doubt than evidence deserving all reasonable inference. Plaintiff also has not advanced any theories explaining his suspicion—for instance, Plaintiff does not point out inconsistencies in copies of the same document. See, e.g., In re Tarantola, 2010 Bankr. LEXIS 2435, 2010 WL 3022038 (Bankr. D. Ariz. July 9, 2010). Plaintiff has not even attached the allegedly suspicious documents to the Complaint or the Response, and the Plaintiff Affidavits do not address this issue. In the absence of a more compelling pleading, the Court is comfortable affording Defendant the ordinary presumptions of authenticity of its documents.[15]

---

[15] To the extent that the Court lacks constitutional jurisdiction over the false recordation claim—an argument raised by Defendant—that claim would have to be dismissed.

Case 4:12-ap-00100-EWH    Doc 48    Filed 02/06/13    Entered 02/06/13 14:34:47    Desc
Main Document - Motion to Dismiss Complaint    Page 23 of 25

E.    <u>Contingent Claim for Credit for Alleged Third-Party Payments</u>

In the event that Plaintiff's other claims are denied, Count IV seeks, as alternative relief, credit and an accounting for "miscellaneous payments" made by third parties. However, the language of the DOT does not apply to such alleged payments. Instead, as Defendant points out, such payments are compensation for waste or destruction of the Residence. Therefore, Defendant is entitled to summary judgment on Count IV.

## VI. CONCLUSION

Defendant has demonstrated that it has standing to enforce the Note and DOT and that the documents evidencing that standing were properly executed. In addition, Plaintiff is not entitled to credit for alleged third-party payments. The Court need not address the balance of Plaintiff's claims, as they are either duplicative (declaratory judgment and quiet title) or beyond the Court's jurisdiction (notary fraud). A separate order will be entered on this date dismissing the Complaint with prejudice.

The Court will, however, retain jurisdiction to consider Defendant's claim for its attorneys' fees and costs. Defendant is ordered to file its fee application within 30 days of the date of this Memorandum Decision.

Dated and signed above.

Notice to be sent through the
Bankruptcy Noticing Center
to the following:

David Connelly
Elizabeth Connelly
11085 W. Denier Dr.
Marana, AZ 85653

Ronald Ryan
Ronald Ryan, PC
1413 E. Hendrick Dr.

24

Tucson, AZ 85719

U.S. Bank National Association
U.S. Bancorp Center
800 Nicollet Mall
Minneapolis, MN 55402

Kyle Hirsch
Bryan Cave LLP
2 N. Central Ave., Ste. 2200
Phoenix, AZ 85004

Office of the U.S. Trustee
230 N. First Ave., Ste. 204
Phoenix, AZ 85003